**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**Milwaukee Division**

---

ROBERT F. KOLP,

      Plaintiff,

v.

Case No.: 26-cv-1053

AURORA HEALTH CARE, INC., and
ADVOACATE AURORA HEALTH, INC.,

      Defendants.

---

## COMPLAINT AND JURY TRIAL DEMAND

---

Plaintiff Robert F. Kolp, by and through his attorney Adam M. Kent of the Law Office of Adam M. Kent, hereby alleges and complains as follows:

### NATURE OF THE ACTION

1.    This is a civil action brought pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"), to redress Defendants' unlawful refusal to hire Plaintiff Robert F. Kolp because of his association with a person with a disability, in violation of 42 U.S.C. § 12112(b)(4).

2.    Plaintiff seeks compensatory damages, punitive damages, back pay, front pay, lost benefits, injunctive relief, and attorneys' fees and costs as remedies for Defendants' discriminatory conduct.

1

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), and 42 U.S.C. § 12117(a), as this action arises under the laws of the United States.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices alleged herein were committed within this judicial district, Defendants operate within this District, and the employment relationship at issue arose and was performed within this District.

## THE PARTIES

5. Plaintiff Robert F. Kolp is an adult individual residing in Washington County, Wisconsin. At all times material hereto, Plaintiff was fully qualified for the position he applied for, having successfully performed the identical position for Defendants for over two years prior to his application.

6. Defendant Aurora Health Care, Inc. ("Aurora Health Care") is a Wisconsin corporation and healthcare organization doing business in the State of Wisconsin, with offices located at 750 West Virginia Street, Milwaukee, Wisconsin 53204, and at Aurora Medical Center – Washington County, 1032 East Sumner Street, Hartford, Wisconsin 53027, at which location the events giving rise to this Complaint primarily occurred.

7. Defendant Advocate Aurora Health, Inc. ("Advocate Aurora") is the parent health system of Aurora Health Care, Inc., doing business in the State of Wisconsin. Upon information and belief, Advocate Aurora exercises control over the employment policies, hiring decisions, and human resources practices of Aurora Health Care, Inc., and at all times relevant hereto constituted a joint employer of Plaintiff and of the personnel responsible for the employment decisions at issue in this Complaint.

2

8.     Defendants Aurora Health Care, Inc. and Advocate Aurora Health, Inc. are joint employers within the meaning of the ADA. Both entities share control over the terms and conditions of employment for personnel at Aurora Medical Center – Washington County, including but not limited to hiring decisions, compensation, disciplinary procedures, and human resources oversight. At all times relevant hereto, both entities were aware of and directed or ratified the employment decisions described in this Complaint.

9.     At all times material hereto, Defendants collectively employed more than 500 employees and each constitutes an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.     On or about March 27, 2024, Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge Number 443-2024-02455, naming Aurora Health Care, Inc. and Advocate Aurora Health as Respondents and alleging violations of the ADA and the Age Discrimination in Employment Act of 1967, as amended ("ADEA").

11.     On or about March 9, 2026, the EEOC issued a Letter of Determination finding reasonable cause to believe that Defendants violated the ADA by denying Plaintiff hire based on his association with a disabled person, in violation of 42 U.S.C. § 12112(b)(4).

12.     The EEOC attempted conciliation but was unable to obtain a settlement with Defendants that would provide relief for Plaintiff.

13.     On or about March 23, 2026, the EEOC issued a Notice of Right to Sue (Conciliation Failure), Charge Number 443-2024-02455, authorizing Plaintiff to institute a civil action within ninety (90) days of receipt. This Complaint is filed within the applicable ninety-day

3

period.

14. Plaintiff has exhausted all administrative prerequisites to filing this action.

## FACTUAL ALLEGATIONS

15. On or about February 22, 2021, Defendants hired Plaintiff as a Public Safety Officer at Aurora Medical Center – Washington County, Hartford, Wisconsin. The decision to hire Plaintiff was made by Dawn Nieth, Public Safety Supervisor ("Nieth"), who served as Plaintiff's direct supervisor throughout his employment.

16. During his employment with Defendants, Plaintiff performed his job duties successfully and satisfactorily. All of Plaintiff's formal performance evaluations were rated "Meets Expectations" or higher. All evaluations were authored and signed by Nieth herself.

17. Nieth's written performance evaluations of Plaintiff included comments such as: "Bob, you have adapted well to the Public Safety Department at Hartford. You continue to ask clarifying questions on department duties/functions. You are conscientious while performing duties and are prompt to respond when answering emails. Continue with the great work you are doing"; "You are a welcome addition to our Team!"; "Your commitment to safety and security is evident as you have been recognized by Senior Leaders on your efforts. Your dedication contributes to our success!"; and "Prioritizes tasks based on importance. Uses time efficiently and responds quickly and constructively when confronted with challenges."

18. In or around June 2022, Defendants granted Plaintiff a merit-based wage increase, reflecting Defendants' satisfaction with Plaintiff's performance.

19. During his employment, Plaintiff's wife, Terry Kolp, was diagnosed with Stage 4 lung cancer. Plaintiff informed Nieth and members of his department about his wife's serious and ongoing medical condition and his resulting need for scheduling flexibility and a transition to first

4

shift in order to assist in his wife's care, but his request was denied.

20. Plaintiff's wife's Stage 4 lung cancer constitutes a physical impairment that substantially limits one or more major life activities and qualifies as a disability within the meaning of the ADA, 42 U.S.C. § 12102.

21. On or about March 3, 2023, Plaintiff gave notice of his resignation to Nieth, citing his need to care for his wife. Nieth responded that she was "sorry to hear" that Plaintiff was leaving. Plaintiff continued to work beyond his two-week notice period to assist the department during a period of understaffing.

22. Upon Plaintiff's resignation, Defendants' internal records reflected that Plaintiff was eligible for rehire. There were no disciplinary actions, formal writeups, or documented corrective counseling in Plaintiff's personnel file at the time of his resignation.

23. In or around late December 2023, the same Public Safety Officer position at Aurora Medical Center – Washington County became available (Job Requisition No. R92990). The position was posted as a part-time, first-shift role at approximately $24.50 per hour for approximately twenty-four (24) hours per week, with employer-sponsored benefits.

24. On or about December 28, 2023, Plaintiff formally applied for the position. Plaintiff was uniquely qualified for the position, having successfully performed the identical job for Defendants for over two years.

25. On or about January 8, 2024, Aurora recruiter Bill Galovich ("Galovich") conducted a video interview with Plaintiff.

26. Plaintiff explained that he was looking to come back to Aurora because the schedule and benefits were better suited to care for his wife who was suffering from Stage 4 lung cancer, especially now that first shift was being offered. Galovich indicated that Plaintiff was obviously

qualified for the position, discussed wages and a potential increase, and discussed next steps including a drug test, flu shots and mask fitting.

27. On or about January 8, 2024, at approximately 11:37 a.m., Galovich emailed Nieth describing Plaintiff as a "good guy" who "would love to come back" and asking whether Nieth would consider a video interview with Plaintiff.

28. In this referral communication to Nieth regarding Plaintiff's application, Galovich noted that Plaintiff's wife had Stage 4 cancer and that Plaintiff had needed to provide care for her as context for Plaintiff's prior departure from Defendants' employ.

29. At approximately 11:54 a.m., Nieth replied to Galovich declining to rehire Plaintiff. In that email, Nieth expressly cited Plaintiff's prior "demands" regarding schedule and shift changes as a basis for her decision.

30. The "demands" for schedule changes referenced in Nieth's email were directly related to Plaintiff's ongoing obligation to care for his wife, who suffered from Stage 4 lung cancer—the same disability-related caregiving obligations that Plaintiff had disclosed to Nieth during his prior employment and that had prompted his resignation.

31. Based solely on Nieth's refusal, Defendants rejected Plaintiff's application. On or about January 9, 2024, Plaintiff received a form email from Aurora's Talent Acquisition department advising that Aurora had decided to pursue other candidates.

32. Plaintiff emailed both Nieth and Galovich asking how he could be found unqualified for a position he had previously performed successfully. Galovich could not provide an answer and instead insisted that it was Nieth's decision to make.

33. The position remained open for several weeks following Plaintiff's rejection. Under information and belief, the individual ultimately hired for the position was not a former Aurora

6

employee who had successfully performed the role.

34. Defendants' own internal records reflected Plaintiff as eligible for rehire at all times relevant hereto.

36. As a direct and proximate result of Defendants' unlawful failure to hire, Plaintiff suffered and continues to suffer economic and non-economic damages, including but not limited to: lost wages and benefits from January 9, 2024 through the date of judgment; lost employer-matched retirement contributions; lost employer-sponsored health and dental insurance benefits; and ongoing wage underemployment.

37. Plaintiff was without employment from January 9, 2024 through approximately April 6, 2024, suffering a complete loss of income during that period.

38. On or about April 6, 2024, in an effort to mitigate his damages, Plaintiff accepted a part-time position with the United States Postal Service at a facility located approximately 125 miles from his residence, at a wage rate and number of hours substantially below what he would have earned in the Aurora position.

39. Plaintiff has suffered emotional distress, humiliation, and harm to his personal dignity as a result of Defendants' unlawful conduct, particularly in the context of being denied employment while serving as the primary caregiver for his wife during her treatment for Stage 4 lung cancer.

## CAUSE OF ACTION

### Violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(4)

### (Association Discrimination – Failure to Hire)

40. Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1 through 39 as if fully set forth herein.

7

41. The ADA prohibits an employer from excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association. 42 U.S.C. § 12112(b)(4).

42. Plaintiff's wife, Terry Kolp, at all relevant times, suffered from Stage 4 lung cancer, a physical impairment that substantially limits one or more major life activities and constitutes a disability within the meaning of the ADA, 42 U.S.C. § 12102.

43. At the time of his application, Plaintiff was a qualified individual for the Public Safety Officer position (Job Req. No. R92990), having previously performed the identical position for Defendants for over two years with satisfactory performance evaluations and without any disciplinary record.

44. Defendants were aware of the association between Plaintiff and his wife's disability. Galovich's referral communication to Nieth expressly noted that Plaintiff's wife had Stage 4 cancer and that Plaintiff had needed to provide care for her. Moreover, Plaintiff had disclosed his wife's condition to Nieth and department personnel during his prior employment, and both his prior requests for scheduling accommodation and his resignation were directly and knowingly connected to his wife's disability.

45. Defendants, through Nieth, denied Plaintiff's application within seventeen (17) minutes of receiving the communication referencing Plaintiff's wife's cancer caregiving needs. Nieth's rejection email expressly cited Plaintiff's prior scheduling "demands"—the caregiving-related requests directly traceable to his wife's disability.

46. Defendants' proffered reason for refusing to rehire Plaintiff is pretextual. No contemporaneous documentation of behavioral issues exists in Plaintiff's personnel file. Plaintiff's formal performance reviews, all authored by the very supervisor who refused to rehire him,

8

consistently rated him satisfactorily and commended his work. Defendants' own records designated Plaintiff as eligible for rehire.

47.     The temporal proximity between Defendants' awareness of Plaintiff's wife's disability and caregiving obligations and the near-instantaneous refusal to rehire him, combined with the absence of any legitimate documented basis for the refusal and the falsity of the proffered reason, establishes that Defendants' decision was motivated by Plaintiff's association with a disabled person.

48.     Defendants' conduct constitutes unlawful discrimination on the basis of association with a disabled individual in violation of 42 U.S.C. § 12112(b)(4).

49.     Defendants acted with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages pursuant to 42 U.S.C. § 1981a(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert F. Kolp respectfully requests that this Court enter judgment in his favor and against Defendants Aurora Health Care, Inc. and Advocate Aurora Health, Inc., jointly and severally, and award the following relief:

A.     Back pay, including lost wages, lost employer-sponsored benefits, and lost retirement contributions from January 9, 2024 through the date of judgment, with prejudgment interest;

B.     Front pay and/or reinstatement to a position equivalent to that which Plaintiff was denied, with all accompanying wages, benefits, and seniority rights, as the Court deems appropriate;

C.     Compensatory damages for emotional distress, humiliation, and harm to personal dignity in an amount to be determined at trial;

9

D.     Punitive damages pursuant to 42 U.S.C. § 1981a(a)(2) in an amount to be determined at trial;

E.     Reasonable attorneys' fees and costs, including but not limited to expert witness fees;

F.     Injunctive relief prohibiting Defendants from engaging in further acts of association discrimination and directing Defendants to implement appropriate anti-discrimination policies and training; and

G.     Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

LAW OFFICE OF ADAM M. KENT

Dated:  June 12, 2026

s/Adam M. Kent
Adam M. Kent
Attorney for Plaintiff
7670 N. Port Washington Rd
Suite 105
Milwaukee, WI 53217
(619) 892-8422
Attorney@adamkentlegal.com
WI Bar No.: 1099634

10